## KANSAS CITY BREWERIES COMPANY, a Corporation, Appellant, v. PATRICK HAFFEY, Respondent.

#### Kansas City Court of Appeals, March 6, 1916.

1. **BILLS AND NOTES: Interest: Varying Written Contract: Parol Evidence Rule: Collateral Executed Oral Agreement to Pay Interest in Certain Way.** Defendant borrowed $20,000 of plaintiff and gave him three notes due in one, two and three years from date. They bore interest from date. At the time they were executed, a parol agreement was entered into that defendant was to pay certain rents, make certain monthly payments on the principal and pay an excess price of $1 on every barrel of beer bought of plaintiff, one-half of which should be applied on the principal and the other half to cover the use of the money, and, if defendant performed these agreements, no interest would be collected on the notes. The defendant fully performed the agreement and in this way paid $14,000 for the use of said money: *Held*, that proof of the collateral executed parol agreement was admissible not to contradict the terms of the note as to interest, but to show that by the collateral agreement the interest had been paid in that way.

2. ———: ———: ———: ———. A mere parol agreement not to charge interest cannot be allowed to contradict a written instrument which says interest is to be charged, in the absence of fraud or mistake.

3. **PLEADING: Answer: Facts Stated: Construed According to Legal Effect.** Although the answer says no interest was to be charged, yet where it sets out the facts and says such excess price was agreed upon as covering the interest, such

answer should be treated as in the nature of a plea of payment and not as attempting to contradict the terms of the notes, since a pleading should be construed according to its legal effect and not by what it is called by the pleader.

Appeal from Jackson Circuit Court.—*Hon. Jos. A. Guthrie,* Judge.

AFFIRMED.

*Cowherd, Ingraham, Durham & Morse* and *A. A. O'Brien* for appellant.

*I. J. Ringalsky* and *M. L. Friedman* for respondent.

TRIMBLE, J.—Plaintiff, in one count, sued to recover $2568.54, being the aggregate amount of interest claimed to be due on three promissory notes executed by defendant to plaintiff. Said notes on the face bore six per cent per annum. It was conceded that defendant had paid the principal of all three of said notes, so that whether or not there was any interest due is the only question in controversy. (In addition to the answer, defendant set up, by way of counterclaim that he had overpaid plaintiff on the principal of said notes to the extent of $157.50; but, as plaintiff admitted during the trial that defendant had overpaid on the principal to the extent of $126.05 and the court in its finding fixed the overpayment at said last-named amount, the question of overpayment is not now one of the contested issues in the case.)

In order to get the matter disposed of on its merits, defendant at the trial waived all objections because the petition sought in one count to recover interest on three separate notes, and because the first two of said notes, or copies thereof, did not accompany the petition, or their absence was unaccounted for.

The three notes were dated December 21, 1909. The first was for $7000 due one year after date, the second was for $6500 due two years after date and the third was for $6500 due three years after date. The amount of interest sued for was made up of the following sums: $581.70 on the $7000 note, $540.13 on the second note and $1446.71 on the third note. When defendant paid the principal of the $7000 note it was delivered to him and no interest was demanded of him, and when he paid the next note it likewise was surrendered without exacting interest thereon. But when defendant paid the principal of the third note and asked that it be surrendered to him, plaintiff refused and demanded payment of interest thereon and also on the two surrendered notes. Plaintiff's explanation of why the first two notes were delivered up without interest being paid thereon is that it considered the aggregate of the notes as only one transaction, namely a loan of $20,000; and plaintiff's secretary and treasurer says he had a verbal understanding with defendant that no interest would be paid until a final settlement was made on the account, that is, until the last of the $20,000 was paid. It would seem that this explanation involves as much of an oral variation of a written contract as is that charged by plaintiff against defendant when the latter asserts that no interest is due from him? According to the terms of the notes the interest on each was due when the notes fell due and there was no provision therein for a postponement of the payment of interest until the last note was paid.

In order to understand the contention between the parties as to the interest claimed it is necessary to state certain facts.

Plaintiff is a corporation engaged in the manufacture and sale of beer and has at least two breweries in Kansas City, one known as Heim's and the other as the Rochester Brewery.

James Flanagan was a director in said plaintiff company and also owned and was conducting, in December, 1909, a saloon at 1724 West 9th street in said city. He had been in business there for many years and desired to sell both his business and the building in which he was located, of which he was also the owner. The defendant Haffey had been his faithful employee in said saloon for years. J. J. Heim was president of plaintiff, the Kansas City Breweries Company. Mr. Carpenter was its secretary, and R. L. Melton was one of its directors and a member of the executive committee. As Flanagan was unable to find a purchaser for his saloon, it was suggested that he sell it to Haffey. Flanagan's price for the location and good will was $20,000. Haffey had saved about $2500 which would be needed by him to stock up and operate the business, so he had to borrow the $20,000.

On December 21, 1909, it was agreed between the plaintiff Breweries Company and Flanagan and Haffey that Flanagan make a lease to plaintiff of the building for three years; that the plaintiff advance to Flanagan for Haffey the $20,000 (which it did by giving him one-third cash and its notes for the balance); that Haffey assume the lease Flanagan had made to plaintiff and pay the rent due thereunder; and that Haffey give his notes for $20,000 to plaintiff evidencing the money it had advanced to Flanagan for the saloon. Flanagan had for years bought his beer of plaintiff at $5 per barrel, and it was agreed that if Haffey would pay $6 per barrel for beer until the $20,000 was repaid and pay the rent for the saloon premises and $100 in cash each month to be applied on the $20,000 he would not be charged any interest on the $20,000 plaintiff was about to advance to Flanagan; that fifty cents, of the $1 excess Haffey was to pay per barrel for beer over that paid by Flanagan, was to be applied in payment of the indebtedness and the other fifty cents of such ex-

cess was the consideration for not charging any interest on said $20,000. This entire agreement and plan was arranged between Flanagan acting for Haffey on one side and Melton acting for plaintiff on the other. Melton was in entire charge of the transaction for the plaintiff with full authority to act.

After the arrangement had been agreed to, Melton had the notes drawn up by the secretary of the company telling him the notes were not to draw interest. The secretary told him he knew that, but that it was a rule of the company that all notes should be drawn as bearing interest. Melton then took the matter up with the company, explaining the arrangement in detail including the agreement about the interest and it was approved and he was given special authority to close it on those terms.

When Melton took the notes to Haffey to sign, he at first objected because they bore interest but Melton told him that was done merely because the company wanted them in that form and the interest clause was inserted merely for the accommodation of the company and that no interest would be charged when the notes were paid. Thereupon, Haffey signed the notes which were the three notes hereinbefore described.

Defendant carried out his part of the agreement in every detail. From December 21, 1909, until May 23, 1914, he bought of plaintiff 28,144 barrels of beer at $6 per barrel aggregating $168,864. The fifty cents per barrel excess on this number of barrels amounted to $14072. In addition thereto, plaintiff by May 23, 1914, had paid the $20,000, had paid all the rent due on the lease plaintiff held; paid for all the beer he had bought and had overpaid on the principal of said notes the sum of $126.05.

The defendant's answer set up the facts which have been hereinbefore detailed. It also pleaded that

the provision in the notes calling for interest at six per cent was inserted without consideration and purely for the accommodation of plaintiff. It further pleaded that defendant carried out its part of the agreement that if defendant paid the excess price for beer no interest would be charged or exacted. The answer further set up that the first two notes, after their maturity, were surrendered to defendant and plaintiff then made an absolute and unconditional renunciation of any and all rights it had in said notes.

Defendant further pleaded that on November 13, 1913, he and plaintiff were in a controversy and dispute over the amount due from him to plaintiff, and that they had an account and settlement thereof, and it was agreed in writing between them that on that date he owed plaintiff $2000, and that since that date he paid said $2000 and more.

There is no dispute over the fact that the contract and arrangements were made as defendant claims they were. Both Flanagan and Melton testify that way and no one contradicts their testimony.

The testimony of Melton, Flanagan and Haffey as to the oral agreement made between the parties was objected to on the ground that it was inadmissible to vary, alter or in any way contradict the plain and explicit statement in the notes that they should bear interest.

The case was tried by the court without a jury. Plaintiff's objections to the evidence as to the oral agreement were overruled. The court then found for defendant on plaintiff's petition and for defendant on his counterclaim in the sum of $126.05.

By declarations 4, 5 and 6 given for plaintiff, the court held that the execution and delivery of the notes were not obtained by fraud, trick, misrepresentation or concealment; that no mistake was committed by the parties in the execution and delivery of said notes;

and that oral evidence of any usage or custom on the part of plaintiff relative to the collection of interest on notes held by it was incompetent, irrelevant and immaterial.

By declaration No. 1 for plaintiff the court held that "no oral evidence is admissible to alter or vary the terms of the promissory note declared upon by plaintiff in its petition." But the court refused plaintiff's declaration No. 3 that "no oral evidence may be introduced of any agreement made orally that no interest would be charged to or collected from defendant upon the notes. declared upon by plaintiff in its petition, if the supposed oral agreement was made previous to or at the time of the execution of such promissory notes."

The court also refused plaintiff's declaration of law No. 2, which said as a matter of law that "there: is no evidence in this case tending to prove a failure or a lack, either partially or totally, of consideration for the promissory notes declared upon by the plaintiff in its petition."

Defendant asked no declarations in his behalf and none were given.

Plaintiff's given declaration No. 1 being broad enough to cover the ground occupied by the refused declaration No. 3, the court's refusal of the latter may be considered as having been based on that reason. Certainly the two declarations announce the same legal proposition and the court's action should not be construed as announcing that proposition in one breath and then taking it back in the next. For this reason we do not agree with plaintiff's contention that the judgment in defendant's favor necessarily shows that the court took the view that the law permitted defendant to contradict the written terms of the notes as to interest by showing an executed parol contract whereby no interest was to be charged. If the judgment can be pro-

perly placed upon any other theory consistent with the facts as pleaded, then it should be permitted to stand. For instance, if the facts set up in defendant's answer and the evidence adduced in his behalf show that the oral agreement merely provided a method by which defendant could pay the interest *and that payment was made in that way,* then the parol agreement does not contradict the terms of the written notes as to interest but shows that payment of such interest was made by the extra fifty cents on each barrel of beer bought. Defendant ought not to be deprived of the opportunity of showing that he has paid the interest in that way simply because in his answer he has stated it in the form that no interest was to be charged. The answer states it in this form, it is true, but it also sets out the facts and says: "Said increase of price of fifty cents per barrel charged the defendant by the plaintiff, it being agreed would cover any interest the plaintiff would be entitled to." It is undisputed that the defendant paid $14,072 to plaintiff in the fifty cents per barrel excess price paid on beer bought of plaintiff. So that if the *facts* in defendant's answer showed the interest to have been paid in that way, and the evidence supports the facts alleged, there is no reason why defendant's answer should not be treated as in the nature of a plea of payment even if the answer does allege that no interest was to be charged if the oral agreement was performed. Because a pleading should be construed according to its legal effect and not according to what it may be called by the pleader.

There is no question but that a mere parol agreement not to charge interest cannot be allowed to contradict a written instrument which says interest is charged. Because "it is an invariable rule of law that in the absence of fraud or mistake, parol evidence is not admissible to contradict or vary a written contract." [Crim v. Crim, 161 Mo. 544, l. c. 553; Calloway

v. McNight, 180 Mo. App. 621; Jenkins & Sons Music Co. v. Johnson, 175 Mo. App. 355; Third National Bank v. St. Charles Savings Bank, 244 Mo. 554.]

The facts in the case at bar present a different situation. Defendant's position is that he fully paid what was agreed would be accepted in payment of interest and the same has been accepted and enjoyed by plaintiff. The suit is between the original parties to the contract. If, in consideration of the plaintiff advancing $20,000, defendant agreed to buy plaintiff's beer, and, in consideration of getting the said sum without interest, defendant agreed to pay fifty cents per barrel in excess of the regular price, which would cover, and more than cover any amounts which would be due as interest, and if that agreement was fully kept and performed on defendant's part and plaintiff obtained the benefit thereof, then it would seem that not only is there no consideration for the agreement in the notes to pay interest, but that to refuse defendant opportunity to show the oral *executed* agreement would change the parol evidence rule from being a protection against fraud into a shield or protection for it. Defendant has fully paid what was agreed would be accepted in lieu of interest and the plaintiff has received and has the benefit thereof. Not only do all the parties to the arrangement testify that such was the arrangement, but the conduct of plaintiff in surrendering the first two notes, without collecting interest, shows that such was the agreement. In its essence then, the oral agreement does not contradict the writing and attempt to show that plaintiff was to receive nothing for the use of its money, but that it agreed that the use thereof might be paid for in a certain way. Suppose A were to lend B $1000 and take the latter's note for it due in one year drawing interest at six per cent. at the same time orally agreeing to accept dairy products to the amount of $60 if B would immediately commence de-

livering them and complete such delivery by the time he paid the principal at the maturity of the note. Can A obtain the benefit of such oral agreement and enjoy the $60 worth of farm products which B has delivered and yet make B pay an additional $60 in cash as interest? The obligation of the maker of a note to pay interest is separable from the obligation to pay the principal. Interest is a creature of the statute. Sometimes it is evidenced by separate notes. And it can be sued for separate from the principal. Frequently a note will draw interest at one rate to maturity and at another rate after that time. Since, therefore, the obligation to pay interest is separate and divisible from the obligation to pay principal, why cannot an oral agreement, which had been duly executed, operate to liqui-date the interest only, the same as an executed parol agreement that the entire note be liquidated in that way? The proof of such an executed oral agreement does not contradict, add to, vary or contradict the note, but only shows that according to a collateral agreement, made at the time and afterwards duly performed, the note has been fully paid.

This idea is more fully expressed in Tucker v. Tucker, 113 Ind. 272, l. c. 273, where it is said:

"It is, of course, abundantly settled that conditions cannot be engrafted upon written instruments by proof of prior or contemporaneous oral agreements; nor is it competent to show an executory parol agreement that a promissory note, which is payable absolutely and unconditionally on its face, was not to be paid in case a certain event happened, or failed to happen, or that it was to be, or might be, paid in any manner different from what it purported to be by its terms. [Potter v. Earnest, 45 Ind. 416; McClintic v. Corey, 22 Ind. 170; Singer Mfg. Co. v. Forsyth, 108 Ind. 334; Rhoads v. Jones, 92 Ind. 328; Trentman v.

Fletcher, 100 Ind. 105; Snyder v. Koons, 20 Ind. 389;
1 Daniel Neg. Instr., section 81.] This rule does not,
however, prevent the maker of a promissory note from
alleging and proving an *executed* agreement, made at
the time of the execution of the note, that it should be
delivered up upon the performance of certain condi-
tions by the maker. The effect of averments and proof
of that nature is not to vary, contradict or add to the
note, but to show that, according to the terms of a col-
lateral agreement, made at the time, and since fully
executed, the note has been paid and satisfied.''

In Crossman v. Fuller, 17 Pick (Mass.) 171, l. c.
174 the court said:

''This was a parol collateral agreement which has
*been executed.* If it had not been, it could not have had
the effect to vary or contradict the terms of the note.
Thus, if a note were payable in money, a collateral
agreement made at the time of the making of the note,
that it should be payable in goods, could not be admit-
ted in evidence. But the party having a claim in virtue
of an executory collateral contract, must pursue his
remedy upon the agreement itself for the breach of it.
But if the holder of a note for money should, after it
was made and delivered, agree to accept goods in pay-
ment, or if he should agree to allow upon the note the
value of any goods or supplies furnished at his request
to a third person, such agreement would, when car-
ried into effect, be considered valid.''

The case of Buchanan v. Adams, 49 N. J. Law 636,
announces the same exception, or apparent exception,
or limitation rather, to the parol evidence rule. [See
also, Howard v. Stratton, 64 Cal. 487; Juilliard v.
Chaffee, 92 N. Y. 529; Sutton v. Griebel, 91 N. W. 825.]

Under sections 1974 and 9999, Revised Statutes
1909, it can be shown that there was no consideration
for the making of a contract or any divisible part of a

contract.  Under sections 7179 and 7180, Revised Stat-
utes 1909, interest is allowed *by operation of law* to
creditors on written contracts after maturity, and by
section 7180 parties may agree in writing for interest
not to exceed eight per cent on money due or to become
due *on any contract*.  So that the mere advancement
of money does not *by operation of law,* and in the ab-
sence of a contract as to interest, is not a consideration,
in itself, for the payment of interest until after ma-
turity.  Consequently, before a borrower can be bound
for payment of interest *before maturity* there must be
a contract to that effect.  If this is true, and the obli-
gations to pay the principal and to pay the interest
are divisible, why is it not just as permissible to show
that there was no consideration for the contract to pay
interest before maturity as to show that there was in
fact no consideration to pay the principal of a note?

The defendant, in his answer, also pleaded that on
November 13, 1913, he and plaintiff were in dispute as
to the amount due from him and pleaded that they had
an accounting and settlement and the amount due on
the account was stated and agreed upon between them
to be $2000, and this agreement was put in writing and
signed by plaintiff.

The evidence shows that on said November 13,
1913, there was a dispute between them and that de-
fendant was referred to Wilkerson, the cashier of
plaintiff.  Defendant was paying his indebtedness of
$20,000 by having one-half of the extra $1 paid for
each barrel of beer applied thereon.  In addition there-
to he paid $100 each month thereon.  Necessarily this
made, during the four years in which over 28,000 bar-
rels of beer were purchased, a long account of money
items.  The cashier testified that he and defendant got
together "to find out how much Haffey owed the com-
pany" and at this time, he gave Haffey the following:

"The Kansas City Breweries Co.,
1010 Commerce Bldg.

Kansas City, Mo. Nov. 13, 1913.

Received of Pat Haffey

Location 1724 West 9th Street, K. C., Mo.

Amount Four Hundred Thirty five and 75/100 Dollars
To apply on Note of $6500. *This now leaves a balance
still due* Nov. 1, 1913 of $2000.

THE KANSAS CITY BREWERIES CO.,
Per W. R. WILKERSON."

Mr. Wilkerson says that the balance due therein
referred only to the principal and not to the interest.
But, at this time, the first two notes had been paid and
delivered to defendant and no interest had been charg-
ed. The cashier must have known this, and it is fairly
inferable that he knew that defendant was not to be
charged with interest on the last note. If interest was
due from Haffey on the whole $20,000 and was to be
paid by him, it was certainly within the purview of the
subject-matter covered by the written receipt or state-
ment and should have been included therein. The court
sitting as a jury could well find that the statement,
"This leaves a balance still due November 1, 1913, of
$2000" meant just what it said, and was not bound to
accept the cashier's explanation of what it meant. The
written statement was more than a mere receipt. It
was a written statement of the amount due between
them. There was no mistake as to the facts. Both
knew the first two notes were delivered and that no
interest was paid thereon. With this knowledge, plain-
tiff stated in writing that the balance due from Haffey
on the $6500 note (on which no interest had been
paid), was only $2000. It would seem that even if error
was committed by the court in admitting evidence of
an oral agreement concerning the interest, the written
statement could be regarded as a subsequent written
admission of the fact that defendant was not to pay

interest on the notes, and this subsequent written admission is of equal authority with the prior written agreement to pay. Hence the trial court's judgment could be upheld on this theory even though, as an otherwise *independent* proposition, the admission of the oral agreement would have been erroneous. If the judgment can be upheld upon any theory, it should not be reversed.

The parol agreement in this case does not mean that plaintiff was to obtain nothing for the use of its money but that it agreed to take its compensation therefor in a certain way. And this agreement has been executed. Not only does all the evidence of the parties who conducted the negotiations agree that such parol agreement was made but the evidence shows it was carried out, and plaintiff's subsequent conduct is in accordance therewith and in addition to that a written statement is made above plaintiff's signature which corresponds perfectly with the fact of such parol agreement and corroborates the fact of its existence.

We think the judgment of the trial court was for the right party and that it should be affirmed. All concur.